**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ) | Bankruptcy No. 07 B 05138 |
| ) | Chapter 13 |
| ROBERT CHARLES ROSS, ) | Judge John H. Squires |
| ) | |
| Debtor. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the objection of Marilyn O. Marshall, the Chapter 13 Standing Trustee (the "Trustee"), to confirmation of the Chapter 13 plan proposed by Robert Charles Ross (the "Debtor"). The Trustee objects to confirmation on the basis that the plan does not propose to pay interest to the Debtor's general unsecured creditors. According to the Trustee, the Debtor is required to pay interest to the unsecured creditors because the plan does not commit all of the Debtor's projected disposable income to the unsecured creditors for a period of five years. The Court holds that the Bankruptcy Code does not mandate that the Debtor's plan provide payment of interest on the allowed, unsecured claims. In addition, the Debtor must commit his projected disposable income as prescribed under 11 U.S.C. § 1325(b)(1)(B) based on "current monthly income" as defined in 11 U.S.C. § 101(10A) in order to satisfy the means test of 11 U.S.C. § 707(b)(2) as calculated in Official Form B22C.

For the reasons set forth herein, the Court sustains in part the Trustee's objection to confirmation of the Debtor's proposed plan. Confirmation of the plan at bar is denied without prejudice. Leave is given the Debtor to file an amended plan within thirty days hereof in accordance with the findings and conclusions set forth in this Opinion. A continued confirmation hearing will be held on October 31, 2007, at 10:30 a.m.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## II. FACTS AND BACKGROUND

The facts in this matter are undisputed. On March 22, 2007, the Debtor filed a Chapter 13 bankruptcy petition and plan. As part of the petition, the Debtor filed Form B22C–Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (the "B22C Form"). Line 58 of the B22C Form indicates that the Debtor's monthly disposable income is $2,852.17. The Debtor also filed a Schedule I - Current Income of Individual Debtor. The Debtor's monthly net income, according to Schedule I, is $3,920.76. Schedule J – Current Income of Individual Debtor, which was also filed with the petition, lists the Debtor's monthly expenses at $2,204.00, thereby leaving monthly net income of $1,716.76.

The Debtor's plan proposes to make monthly payments to the Trustee in the sum of $1,715.00 for thirty-seven months and $1,790.00 per month for an additional seventeen months after the Debtor pays his 401K loan. The plan provides a 100% dividend to all allowed general unsecured creditors over a period of fifty-four months.

The Trustee refuses to recommend the plan for confirmation unless the plan includes interest to general unsecured creditors. The Trustee contends that the unsecured creditors are entitled to interest because the Debtor's disposable income according to the B22C Form is $2,852.17, which, when multiplied by sixty months–the applicable commitment period–equals

$171,130.20. This amount exceeds the Debtor's total unsecured debt of $75,465.00. According to the Trustee, the Debtor's proposed plan does not satisfy the requirements of 11 U.S.C. § 1325(b)(1)(A) or (B) because the Debtor's projected disposable income, as determined by the B22C Form, is not being paid to the unsecured creditors, nor is it being paid over the requisite sixty-month commitment period. The Trustee argues that in order to comply with the statute, the Debtor must pay the unsecured creditors the value of their claims "as of the effective date of the plan." This language, according to the Trustee, has been routinely interpreted to mean that interest must be paid to compensate for the delay in receiving prompt payments. The Trustee acknowledges that while the 2005 amendments to the Bankruptcy Code change the way disposable income is calculated for above median income debtors, present value payments are still required when a debtor is not devoting all of his disposable income.

### III. DISCUSSION

The issues before the Court are of first impression for this judge and involve a determination of (1) whether an above median income debtor who proposes to pay his unsecured creditors in full in less than five years must pay interest to those creditors and (2) how to calculate a debtor's "projected disposable income." The latter issue has generated a plethora of divergent case law and, unsurprisingly, has produced a split among the judges of this and other courts as discussed *infra*. The problem, in part, is created by the lack of a statutory definition for the term.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") governs because this case was filed after October 17, 2005. Section 1325(b)(1) of the Bankruptcy

-4-

Code, the relevant statute at issue, speaks to objections to confirmation of a Chapter 13 plan and provides as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1). Thus, § 1325(b)(1) permits the Trustee to object to confirmation of the Debtor's plan if the value of the property to be distributed under the plan is less than the amount of the claim, or the plan fails to propose that all of the Debtor's "disposable income" to be received in the applicable commitment period will be applied to make payments under the plan.

Section 1325(b)(2) defines "disposable income" for purposes of subsection (b)(1) and states in pertinent part that it "means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor...." 11 U.S.C. § 1325(b)(2)(A)(i). The phrase "projected disposable income," however, is not defined by § 1325 nor is it one of the defined terms in 11 U.S.C. § 101. Section 1325(b)(3), in turn, states that disposable income "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3). Section 1325(b)(4) defines the term "applicable commitment period" and provides in pertinent part that such period "may be less than 3 or 5 years, . . . but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B).

-5-

The Trustee contends that the Debtor's plan does not comply with either § 1325(b)(1)(A) or § 1325(b)(1)(B) because the Debtor is not committing all of his projected disposable income to the plan. Because the Debtor's income is above the median income for Illinois residents, the Code provides that his disposable income is determined by § 1325(b)(2) and (3). Pursuant to the Debtor's B22C Form, this amount is calculated at $2,852.17 per month. Under § 1325(b)(1)(B), the total disposable income received over the sixty-month commitment period is $171,130.20. The Trustee argues that this amount is not being applied to make payments to unsecured creditors under the plan. The Trustee asserts that § 1325(b)(1)(B) cannot be complied with by proposing full payment to unsecured creditors in less than sixty months. The language of subsection (b)(1)(B), according to the Trustee, clearly requires all of the Debtor's projected disposable income be used to make payments to unsecured creditors. The Trustee maintains that a plan for a fifty-four-month term does not comply with this provision. Consequently, the Trustee contends that § 1325(b)(1)(A) applies, and the Debtor must pay interest to the unsecured creditors in order for the Trustee's objection to be overruled. Thus, according to the Trustee, the Debtor must make present value payments to unsecured creditors in order to satisfy the requirements of § 1325(b)(1).

The Debtor argues that he has complied with § 1325(b)(1)(B). The Debtor maintains that "projected disposable income" is defined by Schedules I and J. Using those Schedules, he asserts under the plan he commits all of his projected disposable income for fifty-four months. Further, the Debtor contends that the plan satisfies § 1325(b)(1)(B) by proposing to pay all unsecured claims in full in less than the sixty-month commitment period.

Although the Court must decide the disputed issue of whether the debtor must pay interest to the unsecured claimants, in addition to the full amounts of their allowed claims, at the heart of

this matter is the proper interpretation of the phrase "projected disposable income" as found in § 1325(b)(1)(B). The Trustee argues disposable income is calculated by performing the computations on the B22C Form. The Trustee does not question the manner in which the Debtor completed the B22C Form, nor does she challenge any specific deductions. Rather, the Trustee focuses on the excess income calculated in the B22C Form and how to reconcile that figure with the income reflected on the Debtor's Schedules I and J. The Debtor, on the other hand, contends that disposable income is the net income determined by Schedules I and J. Each party has ample support for their position. Many cases have discussed this very issue with divergent views.

Judge Kenneth J. Meyers in *In re Nance*, Nos. 06-41091, 06-41151, 06-40941, 06-41153, & 06-31832, 2007 WL 2028579 (Bankr. S.D. Ill. July 10, 2007), recently discussed how "projected disposable income" should be calculated for purposes of § 1325(b)(1)(B). The *Nance* opinion thoroughly and succinctly expostulated the three positions that have emerged on this subject.

*Nance* noted that the first view holds that "projected disposable income" must be calculated by using the debtor's actual income at the moment of filing as reflected on a debtor's Schedule I. *Id.* at *2-3 (*citing In re Fuller*, 346 B.R. 472 (Bankr. S.D. Ill. 2006); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006)). *See also In re Balcerowski*, 353 B.R. 581, 590 (Bankr. E.D. Wis. 2006); *In re Edmunds*, 350 B.R. 636, 646-47, 649 (Bankr. D.S.C. 2006); *In re Demonica*, 345 B.R. 895, 900 (Bankr. N.D. Ill. 2006). *Nance* noted that the *Fuller* and *Hardacre* decisions "completely ignore a debtor's 'current monthly income' (as defined in § 101(10A) and referenced on line 20 of Form B22C) in favor of the income amount listed on Schedule I...." 2007 WL 2028579, at *3.

-7-

The second view, on the other hand, according to *Nance*, uses the number on the debtor's B22C Form as the "projected disposable income" unless the debtor or some other party can show that there has been a substantial change in circumstances such that the figures on the B22C Form are not commensurate with a fair projection of the debtor's budget in the future. *Id.* (*citing In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006); *In re Edmondson*, 363 B.R. 212 (Bankr. D.N.M. 2007); *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007)). *See also Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302, 314-15 (B.A.P. 1st Cir. 2007) (stating that the B22C Form is the starting point by which the court determines the debtor's projected disposable income, but this figure can be rebutted by evidence, including the figures reflected on Schedules I and J); *In re Meek*, 370 B.R. 294, 303 (Bankr D. Idaho 2007) (same); *In re Arsenault*, 370 B.R. 845, 852 (Bankr. M.D. Fla. 2007) (same); *In re Watson*, 366 B.R. 523, 531-32 (Bankr. D. Md. 2007) (same); *In re Grant*, 364 B.R. 656, 667 (Bankr. E.D. Tenn. 2007) (same); *In re Fuller*, 346 B.R. 472, 485 (Bankr. S.D. Ill. 2006) (same); *In re Purdy*, No. 06-30679-LMK, 2007 WL 2276271, at *8 (Bankr. N.D. Fla. Aug. 6, 2007) (same); *In re Foster*, No. 05-50448-HCD, 2006 WL 2621080, at *6-7 (Bankr. N.D. Ind. Sept. 11, 2006) (same); *In re LaPlana*, 363 B.R. 259, 266 (Bankr. M.D. Fla. 2007) (noting that "parties calculating projected disposable income must use the same income exclusion, *e.g.* social security income, and use the same allowed IRS standards as permitted in the means test; however, the numbers will change based on changes in the debtor's financial circumstances"); *In re Risher*, 344 B.R. 833, 837 (Bankr. W.D. Ky. 2006) (stating that the B22C Form "represents a floor, not a ceiling"); *In re Grady*, 343 B.R. 747, 751 (Bankr. N.D. Ga. 2006) (noting that the figure on the B22C Form is useful as an "estimate," but that a court should evaluate a debtor's past and current financial status to determine disposable income). According to this approach,

-8-

the alleged change of circumstances would be examined at the confirmation hearing. *Nance*, 2007 WL 2028579, at *3. At that time, the debtor would be given the opportunity to present evidence that the figures reflected on the B22C Form were inadequate projections of future finances. *Id.* If the debtor successfully rebutted the presumption, then he would be allowed to use Schedule I to determine projected disposable income and would not be bound by the numbers on the B22C Form. *Id.* This method has the appeal of common sense in an understandable effort to avoid seemingly absurd or impractical results where there are wide variations between the pre-petition income period captured in the B22C Form and the reasonably anticipated post-confirmation income or expenses indicated by Schedules I and J.

*Nance* further examined the third approach which holds that the plain meaning of § 1325(b) requires a simple mathematical calculation using the B22C Form to determine "projected disposable income." *Id.* at *4 (*citing In re Alexander*, 344 B.R. 742 (Bankr. E.D. N.C. 2006); *In re Berger*, No. 07-10112-JDW, 2007 WL 1704403 (Bankr. M.D. Ga. June 11, 2007); *In re Kolb*, 366 B.R. 802 (Bankr. S.D. Ohio 2007); *In re Tranmer*, 355 B.R. 234 (Bankr. D. Mont. 2006); *In re Barr*, 341 B.R. 181 (Bankr. M.D. N.C. 2006); *In re Rotunda*, 349 B.R. 324 (Bankr. N.D. N.Y. 2006); *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wis. 2006)). *See also In re Miller*, 361 B.R. 224, 234 (Bankr. N.D. Ala. 2007) ("Form B22C is dispositive with respect to an above-median income debtor's 'projected disposable income.'"); *In re Brady*, 361 B.R. 765, 774 (Bankr. D. N.J. 2007) (same); *In re Farrar-Johnson*, 353 B.R. 224, 228 (Bankr. N.D. Ill. 2006) (noting that "Schedule J has no role in calculating disposable income" when a debtor's income is above the median); *In re Austin*, No. 07-10031, 2007 WL 2264062, at *10 (Bankr. D.Vt. Aug. 7, 2007) (stating that the court must calculate and assess the sufficiency of the plan payment for above

-9-

median income debtors by application of the formulas set forth in § 1325(b)(2) and (3), and rely on the figures computed in the means test without regard to the contents of Schedules I and J). Pursuant to this view, the income component of "projected disposable income" is the debtor's current monthly income figure as reflected on line 20 of the B22C Form; a review of Schedule J is not required. *Nance*, 2007 WL 2028579, at *4.

After summarizing the three approaches and analyzing § 1325(b) and the case law interpreting same, the court in *Nance* adopted the third approach on the question of how to calculate "projected disposable income." *Id.* *4-7. The *Nance* court stated that "'projected disposable income' should be calculated in strict accordance with Form B22C." *Id.* at *7. *Nance* noted that § 1325(b)(2) "'plainly sets forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income figure under the new law.'" *Id.* at *4 (*quoting Alexander*, 344 B.R. at 747). The *Nance* court looked at the location and proximity of Congress' new definition of "disposable income" immediately following the "projected disposable income" provision. *Id.* The court noted that "[h]ad Congress intended for 'projected disposable income' to mean something different than 'disposable income,' it certainly could have provided a separate definition of the term." *Id.* *Nance* explained that this interpretation does not render the word "projected" meaningless. *Id.* at *5. Rather, the court noted that the word "projected" explains the treatment of "disposable income." *Id.* After looking to the dictionary definition of "projected," the *Nance* court stated that "under § 1325(b)(1)(B), a debtor's disposable income is calculated, according to the statutory definition, and then projected or extrapolated over the plan's term of years." *Id.* *Nance* acknowledged that its adoption of this "strict, mechanical approach" may lead to impractical results when a debtor's disposable income,

as calculated on the B22C Form, does not accurately reflect the debtor's actual income. *Id.* at *6. The unintended, impractical results, according to *Nance*, are for Congress to address by way of amendment to the statute. *Id.* This Court agrees.

The three approaches are supported by persuasive arguments and authority. The present lack of either a definition of "projected disposable income" or a clear statutory method or directive for computing same is at the heart of the problem that has led to the various approaches. The problem cries out for remedial legislation similar to that which solved the conundrum of determining how to calculate "impairment" of exemptions by liens. The addition of 11 U.S.C. § 522(f)(2)(A)-(C) provides an arithmetic test to determine whether a lien impairs an exemption. *See* H.R. REP. NO. 103-835, at 52-54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361-63.

The Court concurs with the logic and reasoning in the *Nance* decision. The Court agrees with the view that when a Chapter 13 debtor is above the median income, § 1325(b)(3) makes clear that "projected disposable income" should be calculated based on the B22C Form; Schedule J has no role in computing that figure. Section 1325(b)(3) expressly states that the amounts reasonably necessary to be expended for purposes of determining disposable income shall be determined pursuant to § 707(b)(2)(A) and (B). The disposable income calculations made on the B22C Form are drawn from the Internal Revenue Service standards and additional deductions allowed under § 707(b)(2), not from the Schedule J. *Miller*, 361 B.R. at 234.

> Courts that turn to Schedules I and J to calculate disposable income also fail to recognize that Congress tied the calculation of disposable income for above median income debtors not only to § 707(b)(2)(A) under the means test, but also to § 707(b)(2)(B). Under § 707(b)(2)(B), the court may consider special circumstances that make "such expenses or adjustments to income

-11-

> necessary and reasonable." If special circumstances necessitate a deviation from Form B22C, those circumstances can be raised under § 707(b)(2)(B) without turning to Schedules I and J.

*Id.* at 235 (footnotes omitted).

Had Congress intended the term "projected disposable income" to mean something with reference to Schedules I and J it could have so clearly legislated. The B22C Form references §§ 1325(b) and 707(b) in several places; those sections are not referenced in Schedules I or J. Thus, it is logical to infer that the B22C Form controls for purposes of the required computations under § 1325(b) and § 707(b).

Turning to the matter at bar, the Court finds the B22C Form provides that the Debtor has monthly disposable income of $2,852.17. Hence, because the Debtor is only proposing to commit the sum of $1,715.00 for thirty-seven months and $1,790.00 per month for an additional seventeen months, the Court finds that not all of the Debtor's projected disposable income, as determined by the B22C Form, is being applied to make payments under the plan. Hence, the Court sustains the Trustee's objection to the Debtor's proposed plan on this point.

Next, the Court rejects the Trustee's argument that an above median income debtor who proposes to pay unsecured creditors in full must propose a plan for a period of five years. Section 1325(b)(4) specifically provides that the term "applicable commitment period" "may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B). Congress thus contemplated shorter plan terms for above median income debtors. Indeed, the unequivocal language of § 1325(b)(4)(B) provides that above median income debtors are permitted to propose a plan that is less than five years only if the plan pays all allowed

-12-

unsecured claims in full over a shorter period of time. *See In re Mathis*, 367 B.R. 629, 635 (Bankr. N.D. Ill. 2007); *Nance*, 2007 WL 2028579, at *11.

In the case at bar, the Debtor's plan proposes to pay the unsecured claims in full over a period of fifty-four months without committing all of his disposable income. Section 1325(b)(4)(B) unequivocally allows for a plan term that is less than five years if the plan provides for full payment of unsecured claims. Hence, the Trustee's argument that an above median income debtor's plan must last for five years fails. Accordingly, the Court overrules the Trustee's objection to the Debtor's proposed plan on this point.

The Trustee states that Congress contemplated the payment of interest to unsecured creditors when a debtor makes those creditors wait for full payment–the present value of the allowed claim. The Trustee fails to cite any authority for this proposition. This is not a case where there is equity in property the Debtor proposes to keep, thus triggering objections under the best interest of creditors test of § 1325(a)(4) that is satisfied by a plan proposing to pay 100% to unsecured allowed claimants over time, plus interest to compensate for the delay in payment. The Court rejects the Trustee's assertion. Indeed, 11 U.S.C. § 502(b)(2), the portion of the Code that deals with the allowance of claims and interest, does not contemplate the payment of unmatured interest to claimants. *Leeper v. Pa. Higher Educ. Assistance Agency*, 49 F.3d 98, 100-01 (3d Cir. 1995). Typically, a Chapter 13 plan does not have to provide for the payment of interest on general unsecured claims. *In re Williams*, 253 B.R. 220, 226 (Bankr. W.D. Tenn. 2000). Section 726(a)(5) of the Code, which governs the distribution of property of the estate in a Chapter 7 case, provides for the payment of interest at the legal rate on any claim, including unsecured claims, before a distribution of property can be made to a debtor. 11 U.S.C. § 726(a)(5). No similar

provision exists with respect to Chapter 13 cases. If Congress intended for unsecured creditors to receive interest on their claims in a Chapter 13 case, it could have so expressly legislated, but did not.

Moreover, because the Debtor's Chapter 13 plan proposes to pay the unsecured creditors the full value of their allowed claims, the requirement of § 1325(b)(1)(A) has been met. *See In re Eaton*, 130 B.R. 74, 78 (Bankr. S.D. Iowa. 1991) (pre-BAPCPA case). Indeed, § 1325(b)(1)(A) does not specify that the value to be paid must be the "value, as of the effective date of the plan." *Id.* Hence, § 1325(b)(1)(A) does not require the payment of present value through interest for unsecured claims. *Id.* By requiring the Debtor to make plan payments per the B22C Form, creditors' claims will be paid sooner rather than later, and the time value of money concept on which the Trustee's objection is based will be functionally addressed through these higher plan payments. Accordingly, the Court overrules the Trustee's objection to the Debtor's proposed plan on the ground that it fails to pay the unsecured creditors interest on their claims.

## IV. CONCLUSION

For the foregoing reasons, the Court sustains in part the Trustee's objection to confirmation of the Debtor's plan. Confirmation of the plan at bar is denied without prejudice. Leave is given the Debtor to file an amended plan within thirty days hereof in accordance with the findings and conclusions set forth in this Opinion. A continued confirmation hearing will be held on October 31, 2007, at 10:30 a.m.

-14-

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 9/13/7

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Robert C. Ross
### Bankruptcy No. 07 B 05138

Christy R. Black, Esq.
Nathan E. Curtis, Esq.
Law Offices of Peter Francis Geraci
55 E. Monroe Street, Suite 3400
Chicago, IL 60603

Jay R. Tribou, Esq.
Office of Chapter 13 Standing Trustee
Marilyn O. Marshall
224 S. Michigan Avenue
Suite 800
Chicago, IL 60603